UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN THE MATTER OF: )
) CASE NO. 10 B 16195
SHERRON L. LEWIS, JR., ) Chapter 13
)
Debtor )

**MEMORANDUM OPINION**
**AND**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I. State of Colorado's Objection to Confirmation
of Debtor's Chapter 13 Plan (Docket No. 31)
and
Chapter 13 Trustee's Motion to Dismiss Case
with Prejudice (Docket No. 115)

II. Debtor's Motion to Remove Chapter 13
Trustee (Docket No. 136)

**INTRODUCTION**

Debtor Sherron L. Lewis ("Debtor") filed in the above-entitled case pro se under Chapter 13 of the Bankruptcy Code on April 13, 2010.

The State of Colorado ("Colorado") filed its Objection to Confirmation of Debtor's proposed Chapter 13 Plan. The Chapter 13 Trustee filed Motions to Dismiss this case on various grounds, including the Motion discussed here to dismiss this case with prejudice. An evidentiary hearing was ordered on issues presented and was held. The hearing on the Colorado Objection was consolidated with hearing on factual issues as to venue presented in Paragraph 21 of the Chapter 13 Trustee's Motion to Dismiss with prejudice.

The Trustee filed other Motions to dismiss. However, those are moot and need not be reached in light of the Findings and Conclusions herein. Because Debtor's Plan cannot be

confirmed and Debtor does not qualify to file in the Northern District of Illinois, confirmation must be denied and the case dismissed.

Debtor filed a Motion to Remove the Chapter 13 Trustee pursuant to 11 U.S.C. § 342(c), to which Trustee responded. Debtor was ordered to file any Reply to that Motion, by a set date, but did not do so nor did he appear on the date scheduled for ruling. For reasons stated below, that Motion is denied.

Pursuant to the foregoing pleadings and hearings thereon and based on evidence taken and pleadings which were not contested, the following will constitute Findings of Fact made and Conclusions of Law to be entered with regard to the Motion of Colorado and Paragraph 21 of the Trustee's Motion to Dismiss with prejudice; and to the Motion of Debtor to Remove Trustee. Separate orders are signed and to be entered this date whereby the Objection by Colorado to Confirmation and the Trustee's Motion to Dismiss with prejudice are sustained, the Debtor's Motion to Remove the Chapter 13 Trustee will be denied, and Trustee's Motion to Dismiss this Chapter 13 Bankruptcy case will be granted with a prohibition on refiling within this District unless permitted by order of this court on Motion and Notice for good cause shown.

### I. OBJECTION OF COLORADO TO PLAN CONFIRMATION AND PARAGRAPH 21 OF TRUSTEE'S MOTION TO DISMISS

#### Findings of Fact

**Debtor's Domicile and Residence**

1.  Sherron L. Lewis Jr. (the "Debtor") has had at all times, since and at the time this bankruptcy case was filed on April 13, 2010, a Colorado driver license, not an Illinois driver license.

2.  The Debtor is registered to vote in Colorado, not Illinois.

3.  The Debtor first opened a bank account in Illinois on April 9, 2010, using an Illinois address. The Debtor's prior bank accounts were opened in Colorado and used a Colorado address.

4.  The Debtor's main vehicle, Colorado license plate no. 479WGK, 2000 Ford Expedition, is registered in Colorado and the registration was renewed in Colorado on or about June 25, 2010. The Debtor has no vehicles registered in Illinois.

5.  The Debtor has not filed any Illinois state tax returns.

6.  The Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income lists the Debtor's state of residence as "Colorado." [Doc. No. 10, page, line 16].

7.  Debtor filed an Adversary Complaint stating that "[t]he principal asset of the Debtor/Plaintiff's estate is his residence located at 2551 York Street, Denver, CO 80205 ("York Street"), a property the Debtor/Plaintiff has owned for approximately 15 years." [Doc. No. 18, ¶ 5].

8.  On the Amended Schedule C, the Debtor claims a Colorado homestead exemption for his residence at 2551 York Street, Denver, Colorado 80205 (the "York Street property").

9.  On December 10, 2009, the Debtor signed, under a penalty of perjury, a Home Affordable Modification Trial Period Plan under the federal government's Home Affordable Modification program for the first mortgage on the said York Street property in Colorado with Chase Home Finance, LLC, for a three-month trial period. In this signed document, the Debtor represents that "I live in the Property as my principal residence. . . ." [Doc. No. 60, pages 13 of 16], referring to the York Street property.

10. On or about April 6, 2010, the Debtor received for foreclosure assistance in Colorado a $1,800 check from Paraclete Partners, LLC, 1045 Clarkson Street, Suite 306, Denver, Colorado 80218. The check was deposited into the Debtor's bank account in Colorado.

11. The Debtor received a $550 Money Order, dated May 12, 2010, payable to him at the York Street property, which was deposited in Colorado on May 18, 2010.

12. On July 7, 2010, the Debtor filed Articles of Organization for America's Foreclosure Defense, LLC, with the Colorado Secretary of State, forming thereby a limited liability company under Colorado law with a principal street address as the York Street property.

**April 13, 2010 Petition, Statements, and
Schedules, and June 29, 2010 Amended Schedules**

13. On April 13, 2010, the Debtor filed, under a penalty of perjury, the above-entitled Voluntary Petition under Chapter 13 of the Bankruptcy Code, together with a Statement of Financial Affairs, the original Schedules A, B, C, D, E, F, G, H, I and J, and a Chapter 7 Individual Debtor's Statement of Intention. [Doc. No. 1]. On June 29, 2010, the Debtor filed the amended Schedules A, B, C, D, F, G, H, I and J. [Doc. No. 39].

14. On his original Schedule A, the Debtor listed an ownership interest in eight (8) Colorado properties and a 50% ownership in one Illinois property at 1010 N. Western Avenue, Park Ridge, Illinois 60068 (the "Park Ridge property"). The Debtor's Amended Schedule A, omitted the real property at 500 E. 11th Avenue, #301, Denver, Colorado 80203 and added the real property at 1680 S. Decatur Street, Denver, Colorado 80219.

15. The Debtor has not established any ownership interest in the Park Ridge property.

16. On the Amended Schedule A, the Debtor claimed only a secured claim in the amount of $233,000 for the York Street property.

17. On the amended Schedule C, the Debtor claimed an exemption under 11 U.S.C. § 522(b) for the York Street property, citing the Colorado homestead exemption.

18. On the Amended Schedule D, the Debtor claimed a secured claim in the amount of $233,000 and an unsecured claim in the amount of $97,000 for the York Street property. The Debtor claimed no other secured or unsecured claims with respect to any of the eight other real properties listed on the Amended Schedule A.

19. On the Original Schedule G, the Debtor did not claim any executory contracts or unexpired leases of real property.

20. On the Amended Schedule G, the Debtor claimed a residential lease with a tenant for real property at 4950 Eagle Street, Denver, Colorado 80205 (the "Eagle Street property").

21. The Debtor has entered into a lease agreement dated April 15, 2009, for real property at 1680 South Decatur Street, Denver, Colorado 80219 (the "Decatur property"), for a monthly rental payment of $325.

22. On June 7, 2010, the Debtor filed a Notice of Correction of 341 Hearing Testimony, disclosing that the occupant of the Decatur property pays him $650 to $800 per month. [Doc. No. 27].

23. The Debtor presented has no evidence of any ownership interest in the Decatur property.

24. The real property records from the Public Trustee for Denver County, Colorado, show that a Public Trustee's Certificate of Purchase was issued to Deutsche Bank Trust Company Americas on March 6, 2008, for the Decatur property as a result of a Public Trustee sale.

25. The real property records from the Public Trustee for Denver County, Colorado, show that a Public Trustee's Deed was recorded on July 10, 2008, by Deutsche Bank Trust Company Americas for the Decatur property.

26. The court records from Denver County, Case No. 2010c66936, show that a writ of restitution was entered by the court on August 19, 2010, against Kevin D. Guarneros and all persons in possession or occupancy of the Decatur property.

27. On his Original Schedule I and on his Amended Schedule I, the Debtor listed the address of his employer as "2551 York Street, Denver, CO."

28. On the Original Schedule I, the Debtor listed his regular income from operation of business/profession/farm as $1,500 and his income from real property as $1,150 for a combined average monthly income of $2,650.

29. On the Amended Schedule I, the Debtor listed his regular income from operation of business/profession/farm as $1,740, less $200 for payroll taxes and Social Security, and his income from real property as $1,950 for a combined average monthly income of $3,490.

30. On the Original Schedule J, the Debtor listed his rent, home mortgage, or mobile-home lot rent as $1,442, excluding real estate taxes and property insurance.

31. On the Amended Schedule J, the Debtor listed his rent, home mortgage, or mobile-home lot rent as $1,530, excluding real estate taxes and property insurance.

32. On the Original Schedule J, the Debtor listed his Average Monthly Expenses as $2,462 and a monthly net income of $188.

33. On the Amended Schedule J, the Debtor listed his Average Monthly Expenses as $3,490 and a monthly net income of $385.

34. In response to Question 3 in the Statement of Financial Affairs, the Debtor listed mortgages of $235,000 (first mortgage) and $97,000 (second mortgage) and monthly payments of $1,178 and $265, respectively, for the York Street property.

35. In response to Question 3 in the Statement of Financial Affairs, the Debtor listed monthly payments of $680 to Bank of America for a first mortgage and monthly payments of $400 to Bank of America for a second mortgage for the Eagle Street property. However, Debtor also claimed that no amount is owing on those mortgages.

36. In Part A of the Chapter 7 Individual Debtor's Statement of Intention, Debtor stated that he intends to retain both the York Street property and the Eagle Street property. [Doc. No. 1, page 36 of 38].

37. In response to Question 1 in his Statement of Financial Affairs, Debtor listed gross amount of income from his self-employment as $9,468.

38. In response to Question 4 in the Statement of Financial Affairs, the Debtor listed as lawsuits to which the Debtor is or was a party within one year immediately preceding the filing of this case as Lewis v. Williams, 09-CH-23424, in Illinois state court, and Lewis v. James D. Schmidt et al., 10cv1819, in Illinois federal district court.

39. The Debtor failed to disclose a May 7, 2009, Order on Motion to Dismiss and judgment award of $1,000 against him in Sherron L. Lewis Jr. v. IndyMac, 08cv23 (Ouray County District Court, State of Colorado).

40. The Debtor failed to disclose a September 14, 2009, minute order upholding an award of $8,887.50 in fees and $1,875.06 against him in Sherron L. Lewis Jr. v. IndyMac, 08cv23 (Ouray County District Court, State of Colorado).

41.  The Debtor failed to disclose a July 30, 2009 judgment against him for attorney fees and costs in the amount of $20,492.25, in <u>Kevin D. Guarneros and Sherron L. Lewis Jr. v. Deutsche Bank Trust Company</u>, 08cv1094 (U.S. District Court for the District of Colorado).

**Amended Chapter 13 Plan**

42.  On August 19, 2010, the Debtor filed his amended Chapter 13 Plan (the "Plan"). [Doc. No. 97].

43.  The Plan identifies no monthly household income or expenses in paragraph one.

44.  The Plan identifies direct payments of claims by the Debtor of $1,178 per month to Chase Manhattan (first mortgage) and $265 per month to Chase Home Finance (second mortgage) for the York Street property.

45.  The Plan identifies payments by the Debtor to the trustee of $189 for 36 months for total payments of $6,804.

46.  The Plan provides for Trustee's fees of $680.40 from the payments by the Debtor.

47.  The Plan identifies payments of $3,000 for "Allowed priority claims other than those of the debtor's attorney."

48.  The Plan purports to offer estimated monthly payments of $3,124 available for general unsecured creditors and interest during the initial plan term.

**Actual Mortgages Owed by Debtor: York Street and Eagle Street**

49.  The amount owed on the first mortgage for the York Street property is $245,068.17. [Claim no. 4].

50.  According to the lender on the York Street property, the Debtor's actual monthly mortgage payment for the first mortgage is $1,793.28. The trial modification plan for the first mortgage provided for payments of $1,178 per month, but was only for only three months with

the final payment ending on March 1, 2010. It did not result in a modification because the Debtor was denied a permanent modification. See Doc. No. 84 and No. 84-3.

51. The Debtor's actual monthly mortgage payment for the second mortgage on the York Street property is approximately $352.64, for a total of monthly mortgage payments of $2,145.92 on that property.

52. The amount owed on the first mortgage for the Eagle Street property is $126,817.36. [Claim no. 5].

53. The Debtor's actual monthly payment for the first mortgage on the Eagle Street property is approximately $681.33. [Claim no. 5-1].

54. The Debtor's actual monthly payment for the second mortgage on the Eagle Street property is approximately $400, for a total of monthly mortgage payments on that property of approximately $1,081.33. [Doc. No. 1, Statement of Financial Affairs, page 28 of 38].

**Mortgage Arrears: York Street and Eagle Street**

55. The Debtor's pre-petition arrears for the York Street property is $24,604.40, according to Chase Home Finance, LLC. [Doc. No. 89].

56. The Debtor's pre-petition arrears for the Eagle Street property is $1,663.99, according to BAC Home Loan Servicing, L.P. [Claim No. 5-1].

**Debtor's Actual Income**

57. The Debtor has provided insufficient documents relating or referring to the Debtor's "income for operation of business/profession" shown as $1,740 on line seven of his Amended Schedule I to support such income.

58. The Debtor has provided insufficient documents relating or referring to the Debtor's income from real property of $1,950 on line eight of the amended Schedule I to support such income.

59. The Debtor has provided insufficient documents relating or referring to the Debtor's income from "self employment" of $9,468 in response to paragraph one of the Statement of Financial Affairs.

60. Schedule C of the Debtor's 2009 federal tax return identifies gross annual income of $15,423.

61. Schedule E of the Debtor's 2009 federal tax return identifies rents received in 2009 as totaling $6,654 from the Eagle Street property.

**Colorado Civil Law Enforcement Action: Ruling and Preliminary Injunction**

62. On August 16, 2010, the Jefferson County District Court, Colorado, in State of Colorado ex rel. John W. Suthers, Attorney General v. Sherron L. Lewis Jr. et al., 10cv3537, enjoined the Debtor's business operations and activities.

63. The state court ruled that the law enforcement action was expressly exempted from the Bankruptcy Code's automatic stay, because it is a "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power. . . ." 11 U.S.C. § 362(b)(4). [Ruling and Preliminary Injunction Order, at p. 2].

64. The preliminary injunction enjoins the Debtor from "[s]oliciting or accepting payment for services of any kind in connection with foreclosure or mortgage assistance, foreclosure or mortgage relief, foreclosure or mortgage consulting, mortgages, or real estate." [Ruling and Preliminary Injunction Order, at p. 4].

- 10 -

65.   The preliminary injunction also requires the Debtor to pay $76,050 to the Colorado Attorney General's Office as mandatory injunctive relief upon dismissal of the bankruptcy case. [Ruling and Preliminary Injunction Order, at p. 5].

66.   The Debtor has represented to this Court that his business consists of providing assistance to persons whose properties are in foreclosure. [Doc. 61, at p. 2].

67.   Facts set forth into Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW ON COLORADO'S OBJECTIONS
## AND
## TRUSTEE'S MOTION TO DISMISS WITH PREJUDICE

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and is referred by the district court under 28 U.S.C. § 157(a) and (b)(1).

### Venue under 28 U.S.C. § 1408

28 U.S.C. § 1408 governs venue of cases under Title 11 and provides:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district;

In paragraph four of a pleading filed by Debtor herein, he asserted that he "has been domiciled on and off" [at 1010 N. Western Avenue, Park Ridge, IL] since April of 2009. [Doc. No. 92].

However, a person cannot establish domicile "on and off." As noted in In re Donald, 328 B.R. 192, 200 (BAP 9th Cir. 2005), "domicile is one's permanent home, where one resides with the intention to remain or to which one intends to return and to which certain rights and duties are attached." The Debtor's own filings, conduct, and admissions in this case negate domicile in Illinois.

With respect to residence, 17 Moore's Federal Practice, Section 110.03[1] (3rd ed.) states that "residence . . . is equivalent to permanent residence or legal domicile."

The Debtor has identified in a sworn petition to this Court that his residence is in Colorado. [Doc. No. 10, page 2, line 16].

Indeed, the Debtor pleaded in his Adversary complaint that his principal asset is "his residence located at 2551 York Street, Denver, CO 80205." [Doc. No. 18, ¶ 5].

On the Amended Schedule C, the Debtor claims a Colorado homestead exemption for the York Street property. Under § 38-41-201(1), Colorado Revised Statutes, a homestead exemption is available "if the homestead is occupied as a home by an owner thereof or an owner's family."

On December 10, 2009, the Debtor signed a three-month Home Affordable Modification Trial Period Plan under the federal government's Home Affordable Modification program regarding the first mortgage on the York Street property in Colorado and represented, "I live in the Property as my principal residence. . . ." [Doc. No. 60, pages 13 of 16].

While the Debtor has claimed residence at the Park Ridge property in Illinois, he has no record of any ownership interest in or any rental payment for that property.

The Debtor's driver license, automobile registration, and voting registration are in Colorado and the Debtor has no record of paying income taxes in Illinois.

The Debtor did not open an Illinois bank account until April 9, 2010, four days before filing his Chapter 13 voluntary petition.

The Debtor registered his principal vehicle in Colorado in 2010 and never registered it in Illinois.

The Debtor has received funds from third parties during 2010 which were deposited in a Denver, Colorado account.

In response to the foregoing evidence, Debtor's attempt to prove facts to support venue in this District has no merit. He submitted the following exhibits:

> Two water shut off notices from Village of Park Ridge, one for October of 2009, and one for December, 2010.

> Three statements from U.S. Bank for periods ending January 21, 2010, March 17, 2010, and April 19, 2010, each of which each showed his mailing address as the York Street property in Denver.

> Preliminary Injunction Order against Mr. Lewis out of a Colorado court, an order that the Colorado Objection also referred to showing that he is enjoined from his purported business activities.

Accordingly, the Court concludes from the overwhelming weight of proof that the Debtor's domicile, residence, principal place of business in the United States, and principal assets are all located in Colorado and venue is not proper in this district under 28 U.S.C. § 1408. The case should be dismissed for that reason. See also Fed. R. Bankr. P. 1014(a)(2) (allowing for dismissal of cases where petition is filed in improper district).

**Feasibility of Amended Plan**

It is also concluded that the Debtor's Plan is not feasible and cannot be confirmed. As a condition to confirmation of a Chapter 13 plan, 11 U.S.C. § 1325(a)(6) requires that the Debtor be able to make all payments under the plan and comply with the plan.

While the Debtor's Plan claims that he will make current monthly payments on the York Street property in the amount of $1,178 on the first mortgage, his actual monthly payments are due for the first mortgage in the amount of $1,793.28.

The Debtor's proposed Plan makes no allowance for any of the arrears relating to the first mortgage in the amount of $24,604.40.

While the Debtor's Plan claims that he will make current monthly payments on the York Street property in the amount of $265 for the second mortgage, his actual monthly payments are approximately $352.64 for the second mortgage.

The Debtor's Plan omits any monthly payment on his first mortgage for the Eagle Property, even though $126,817.36 remains owing on the first mortgage and the monthly payment amount is approximately $681.33 for the first mortgage.

The Debtor's Plan omits any monthly payment on his second mortgage for the Eagle Property, even though he owes monthly payments of approximately $400 for a second mortgage.

The Debtor has failed to provide sufficient documentation to support his income from operation of business/profession of $1,740 or his rental income of $1,950 that would allow him to make his current monthly mortgage payments and comply with the plan.

The Debtor's current monthly mortgage payments for the two mortgages on the York Street property and the two mortgages on the Eagle Street property exceed $3,000 per month, and he therefore cannot comply with the Plan in light of his income and expenses.

On the Amended Schedule J, the Debtor identified average monthly expenses as $3,105 but included rent, home mortgage, or mobile-home lot rent of only $1,500, leaving him about $1,500 short of income to pay his actual mortgage expenses for the two properties that he seeks to retain.

The Debtor's Plan provides for no payments for the arrears on the mortgages for York Street and Eagle Street.

Under 11 U.S.C. § 101(30), the Debtor fails to meet the threshold eligibility for an "individual with regular income," which means an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title. . . ." See also 11 U.S.C. § 109(e).

Accordingly, the Debtor has failed to demonstrate a feasible plan given his lack of regular income, lack of documented income, and his actual expenses.

### Conclusion as to Colorado's Objection and Trustee's Motion to Dismiss

Pursuant to the foregoing, this case is found to have been filed by Debtor in bad faith, the confirmation of Debtor's Plan will be denied and the case will be dismissed for lack of proper venue with prohibition on refiling in this District unless permitted by further order of this court for good cause shown.

## II  DEBTOR'S MOTION TO REMOVE CHAPTER 13 TRUSTEE

The Court may remove a Chapter 13 Trustee "for cause"[1] after notice and a hearing. The removal of a Trustee under §324 requires more than unsupported inferences but rather a strong showing of cause.[2]

In Debtor's motion to remove the Trustee ('debtor's motion'), paragraph six states "in an apparent collaboration with the AG [i.e. Colorado Attorney General], the Trustee's motion to dismiss rises to the same level of fraud, deliberate misrepresentations and misleading statements . . ."

The Debtor then quotes paragraphs 2-7 of the Trustee's motion to dismiss filed on September 1, 2010:

> 2. The debtor filed this case in bad faith and has proceeded throughout the case in bad faith.
>
> 3. The debtor appeared at the 341 meeting on June 7, 2010. He produced a Colorado driver's license which expires on 9/26/2011, with the address 2551 York Street, Denver, CO, 80205. (See attached).
>
> 4. The debtor filed Schedules A and C on June 29, 2010, listing the 2551York Street property as 100% ownership with a Colorado homestead exemption of $60,000.00. (See attached).

---

[1] 11 U.S.C. §324 (a) of the United States Bankruptcy Code.

[2] Nettles, 354 B.R. at 93; Alexander v. Jensen-Carter (In re Alexander), 289 B.R. 711, 714 (B.A.P. 8th Cir. 2003) (stating that a conclusory contention unsupported by facts is not sufficient grounds to remove a trustee).

>    5.    The debtor claimed, on Schedule A of his petition, to have an interest in 1010 N. Western Avenue, Park Ridge, Illinois, 60068.
>
>    . . .
>
>    7.    The debtor has never been able to produce proof of any interest in the Park Ridge, Illinois property.

However, the Debtor did not show the falsity of any of the Trustee's allegations in paragraphs 2-7. In fact, in the debtor's response and objection, filed on September 22, 2010, in response to the Trustee's Motion to Dismiss filed on September 1, 2010, the debtor, in paragraph four, states, "... it is correct that the debtor has been unable to demonstrate an interest in such property (1010 N. Western Ave., Park Ridge, Illinois) that would satisfy the Trustee."

On September 28, 2010, a hearing was held before this Court and Mr. Lewis failed to produce any proof of interest in the Park Ridge, Illinois property, and the automatic stay was then modified as to that property. Also on September 28, 2010, the Judge asked Debtor to produce his driver's license. The Debtor produced the same driver's license as he had at his 341 meeting - with the Denver, Colorado address on it.

11 U.S.C. §1302 sets out the duties and responsibilities of the Trustee, which include duties to be performed under §704 (a) (4) and §704 (a) (6):

>    "§704 Duties of trustee
>
>    (a)    The Trustee shall ---
>           . . .
>           (4) investigate the financial affairs of the debtor
>           . . .
>           (6) if advisable, oppose the discharge of the debtor."

- 17 -

During the meeting of creditors, the debtor was asked to produce comparable properties of similar type and value for the properties in Colorado.

The Debtor did produce some paperwork on the properties showing some values.

Not being familiar with Colorado properties or locations, counsel for the Trustee took to the internet to try and find the exact addresses of the properties to get a better idea of the value of the properties listed on Schedule A.

Counsel for Chapter 13 Trustee went to the tax assessor's office where each property was located and looked up the addresses. While conducting the property searches, counsel discovered that some properties listed on Schedule A did not show the debtor listed as an owner or co-owner of record.

Counsel for the Trustee attached all the tax search records to the motion to dismiss filed on September 1, 2010, for the Court and the debtor to examine. Debtor was given the opportunity to respond to the Trustee's Motion and did not deny the Trustee's allegation in his response of September 22, 2010.

It was also determined that upon request of the Attorney General's office in Colorado, an order was entered against the Debtor in a state court Colorado action relating to Debtor's internet foreclosure/consultation business and ordering him to release all claims and liens, etc. on the 1010 N. Western Ave., Park Ridge, Illinois property.[3]

---

[3] The Debtor was ordered by the District Court, County of Jefferson, Colorado, 2010cv3537, Division 6, August 16, 2010, pursuant to C.R.S.§6-1-110(1) and C.R.C.P.65, B.(d) to:

> Release in writing no later than August 20, 2010 any claim or interest in real property owned in part or in whole, by...and Norma C. Williams, including releasing any lis pendens, liens or other claims relating to those properties, transferring any and all interests, and notifying the courts of such release in pending legal actions affections those properties. This requirement includes notifying in writing the United States Bankruptcy Court for the Northern District of Illinois in the case, *In re Sherron Lewis*

Such order means that Debtor's income was affected, and thus his ability to fund a Chapter 13 plan.

The Debtor, in paragraph 19, of his motion to remove the Trustee states that the Trustee made statements to the Court that were expressly prohibited by Title 18 U.S.C. §1621 (1) (2) and §1623, but did not state or establish why those specific statutes apply.

Applying the totality of the circumstances standard[4], it is concluded that the Chapter 13 Trustee acted professionally by investigating and contesting the Debtor's case and in seeking to have the case dismissed. Therefore, the motion to dismiss the Trustee will be denied.

### CONCLUSION

Pursuant to the foregoing, separate orders will be entered whereby:

A. Confirmation of Debtor's Amended Plan will be denied;

B. Debtor's Motion to Remove the Trustee will be denied; and

C. This Chapter 13 case will be dismissed with injunction prohibiting Debtor and any representative of Debtor from refiling any new bankruptcy case in the Northern District of Illinois unless given prior permission by this court by order on motion and notice to all creditors in this case and for good cause shown.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 23rd day of December 2010.

---

Jr., No. 10-16195, of this Preliminary Injunction Order and the release and transfer of any claim or interest to the above properties no later than August 20, 2010.

[4] Hagen Constr.Serv., 104 B.R. at 240 (what constitutes sufficient cause for removal of a trustee is left to the sound discretion of the bankruptcy court).